

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
12/05/2014

| | | |
|---|---|---|
| IN RE: | § | |
| SIMBAKI, LTD; dba BERRYHILL BAJA | § | CASE NO: 13-36878 |
| GRILL; dba BERRYHILL BAJA GRILL & | § | |
| CANTINA | § | |
|     Debtor(s) | § | |
| | § | CHAPTER  11 |

## MEMORANDUM OPINION

Unsecured creditors Laura Baatz and Kimberly Kulig have moved to dismiss this small business chapter 11 case for cause under § 1112(b)(4)(J). Simbaki withdrew its proposed plan, and the Court denied a motion to extend Simbaki's deadline for the filing of a new proposed plan. Accordingly, Simbaki has not confirmed a plan within the time fixed by § 1129(e). Because a non-debtor plan proponent may still proposed and obtain confirmation of a plan after the statutory deadline, the motion to dismiss is denied.

## Background

Since 2002, Simbaki has operated two Barryhill Baja Grill franchises in Montrose and Baybrook. (ECF No. 192 at 5). Although the restaurants were initially successful, business began to slow in recent years. *Id.* at 5-6. On November 24, 2013, Simbaki filed a voluntary petition for chapter 11 relief.[1] (ECF No. 1). Movants Baatz and Kulig are former employees of Simbaki who are suing Simbaki under Title VII of the Civil Rights Act for alleged sexual harassment suffered during their employment. (ECF No. 219 at 1-2). Movants both filed proofs of claim for unliquidated amounts on March 7, 2014.

---

[1] Simbaki's original petition checked the box "Debtor is not a small business debtor." (ECF No. 1). However, in its schedules filed on November 25, 2013, Simbaki's aggregate noncontingent liquidated secured and secured debts totaled less than $2,490,925. (ECF No. 8). Simbaki is a small business debtor under 11 U.S.C. § 101(51D).

On August 29, 2014, Simbaki filed a Disclosure Statement and Plan of Reorganization. (ECF Nos. 182, 183). Simbaki then filed an Amended Plan on September 13, 2014. (ECF No. 193). After numerous parties, including Movants, filed objections to confirmation, it became apparent that Simbaki could not obtain approval of the plan within the 45-day statutory deadline.[2] 11 U.S.C. § 1129(e). Simbaki filed an emergency motion to Extend Time to Obtain Confirmation on September 22, 2014. (ECF No. 206). At a September 30 hearing, the Court denied Simbaki's motion and Simbaki withdrew the proposed plan. The 45-day deadline passed with no plan confirmation.

With the failure of Simbaki's plan, the United States Trustee filed a motion to convert the case to a chapter 7 on October 6, 2014. (ECF No. 239). Passage Realty, Inc., one of Simbaki's landlords, joined in the U.S. Trustee's motion. On October 17, 2014, Movants filed a response to Passage's previous motion to dismiss, arguing that conversion to a chapter 7 rather than outright dismissal was in the best interest of the estate. (ECF No. 249 at 8). The Court held a hearing on the various motions to dismiss or convert on November 10, 2014. At the hearing, Enterprise Bank, Simbaki's primary secured creditor, announced that it had located a potential buyer interested in purchasing Simbaki's assets through a chapter 11 plan. Enterprise asked for a continuance to allow the plan to be formulated. The U.S. Trustee announced it was in favor of a creditor plan and would not oppose a continuance.

Movants and Passage opposed a continuance and proceeded to argue their motions. Movants argued that cause existed under § 1112 to convert the case for three reasons: (i) the estate was suffering a substantial and continuing loss and the debtor had no reasonable likelihood of rehabilitation, (ii) the estate was grossly mismanaged, and (iii) Simbaki had failed to confirm

---

[2] Clear Creek Independent School District, Enterprise Bank, Passage Realty, Inc., and BHT Franchise Corporation all filed objections in addition to Movants.

a plan within the time fixed by § 1121(e)(2). The Court denied Movants' first two arguments but gave Movants an opportunity to brief whether the § 1121 deadline applied to non-debtor plan proponents as well as the debtor. Movants filed a brief on November 14, 2014. Passage joined in the brief although its preferred remedy remains dismissal with prejudice over conversion.

## Discussion

*Plan Deadlines for Small Business Debtors*

Movants contend that the 345-day limitation for filing and confirming plan of reorganization under §§ 1121(e)(3) and 1129(e) applies to all parties in interest and not just a small business debtor. Chapter 11 of the Bankruptcy Code provides debtors a limited period of time when they may file a plan of reorganization free from competition. *See In re Express One Intern., Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996). In a typical chapter 11 case, only the debtor-in-possession may file a plan during the first 120 days after the order for relief. 11 U.S.C. § 1121(b). If a creditor or other party in interest wishes to file a competing plan, they generally must wait until 180 days after the order for relief if the debtor has not obtained confirmation of a plan.[3] *Id.* § 1121(c). Section 1121(d) provides that, "on request of *a party in interest* . . . the court may for cause reduce increase the 120-day period or the 180-day period referred to in this section." *Id.* § 1121(d)(1) (emphasis added).

Congress has established a different set of guidelines for small business debtors. A small business debtor is a debtor engaged in commercial or business activities whose debts do not exceed the statutory debt ceiling. *Id.* § 101(51D). Section 1121(e) provides that in a small business case:

> (1) only the debtor may file a plan until after 180 days after the date of the order for relief, unless that period is—

---

[3] A party in interest may also file a plan as soon as a trustee has been appointed or if the debtor did not file a plan within the 120-day exclusivity period.

   (A) extended as provided by this subsection, after notice and a hearing; or

   (B) the court, for cause orders otherwise:

 (2) the plan and a disclosure statement (if any) shall be filed not later than 300 days after the date of the order for relief; and

 (3) the time periods specified in paragraphs (1) and (2), and the time fixed in section 1129(e) within which the plan shall be confirmed, may be extended only if—

   (A) the debtor, after providing notice to parties in interest (including the United States Trustee), demonstrates by a preponderance of the evidence that it is more likely than not that the court will confirm a plan within a reasonable period of time;

   (B) a new deadline is imposed at the time the extension is granted; and

   (C) the new order extending time is signed before the existing deadline has expired.

*Id.* § 1121(e). Section 1129(e) then states that the court "shall confirm a plan …that is filed in accordance with § 1121(e)" not later than 45 days after the plan is filed, unless time is extended in accordance with § 1121(e)(3). *Id.* § 1129. Taken together, §§ 1121 and 1129 give a small business debtor a total of 300 days after the order for relief is entered to file a plan, at which point the court has 45 days to confirm a plan that complies with the applicable provisions of the Bankruptcy Code.

   Under § 1112(b), the court shall convert to chapter 7 or dismiss a case if cause has been established. *Id.* § 1121(b)(1). The Code defines cause in part as "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court." *Id.* § 1121(b)(4)(J). Movants urge that the deadlines in §§ 1121(e) and 1129(e) apply to non-debtor plan proponents as well as the debtor. Because no debtor or non-debtor plan was

confirmed within 345 days after the order for relief, they argue that cause has been established under §1112(b). The Court overrules this contention.

*The Section 1121(e) Deadline Does Not Apply to Non-Debtor Plan Proponents*

Section 1121(e)(2) is open to two possible interpretations. One reading of the statute, which Movants adopt, is that it prohibits the filing of *any* plan of reorganization more than 300 days after the order for relief. The statute provides that "the plan and disclosure statement (if any) shall be filed not later than 300 days after the date of the order for relief. . . ." A reasonable interpretation of this provision is that the words "the plan" encompass all possible plans, whether proposed by the debtor or a non-debtor. Collier's notes that "whether or not the debtor files a plan within the 180-day period, a party in interest may file a competing plan after the expiration of the 180-day period so long as the party files its plan before the expiration of 300 days from the order for relief." *7 Collier on Bankruptcy* ¶ 1121.07[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013).

The alternative reading of § 1121(e)(2) is that "the plan" refers only to the plan contemplated in § 1121(e)(1), namely the plan formulated by the debtor. *In re Riviera Drilling & Exploration Co.* and *In re Florida Coastal Airlines, Inc.*, the only two reported cases to squarely address the point at issue, both reject Collier's interpretation and hold that § 1121(e)(2) only applies to debtor plans. 502 B.R. 863, 874 (B.A.P. 10th Cir. 2013); 361 B.R. 286, 292 (Bankr. S.D. Fla. 2007). Faced with two interpretations of an ambiguous statutory provision, the Court adopts the reasoning of *In re Riviera* and *In re Florida Coastal*.

Both cases point to the amendments made to § 1121(e) by BAPCPA as evidence that Congress intended for the statutory deadline to apply only to plans proposed by the debtor. Prior to 2005, § 1121(e)(1) provided that only the small business debtor could file a plan for 100 days

after the order for relief. 11 U.S.C. § 1121(e)(1) (1994). More importantly, the previous § 1121(e)(2) stated that "*all* plans shall be filed within 160 days after the date of the order for relief." *Id.* (emphasis added). In amending § 1121(e), Congress changed the more general article "all" to a definite article "the." This change means that § 1121(e)(2) now "relates back to its antecedent reference in § 1121(e)(1), namely, to 'a plan' filed by the debtor." *In re Florida Coastal*, 361 B.R. at 291. "If Congress intended [the] new § 1121(e)(2) to apply to all plans, it certainly knew how to say so." *Id.* The change away from the general language of "all plans" evinces an intent to restrict application of § 1121(e)(2) to only those plans filed by debtors.

Further support for this interpretation can be found in § 1121(e)(3)(A), which allows the debtor to obtain an extension of the statutory deadline. Pre-BAPCPA, § 1121(e)(3) allowed an extension "on request of a party in interest" for cause. The amended statute no longer allows any party in interest to obtain an extension, instead limiting extensions to only the debtor. Interpreting the 300-day deadline in § 1121(e)(2) to apply to creditors would mean that a creditor who wishes to confirm a plan is subject to the same drop-dead provision as a debtor, yet unlike the debtor has no ability to extend the deadline. As the *Florida Coastal* court noted, applying § 1121(e) to creditors and then providing no possibility of extension is "absurd." *In re Florida Coastal*, 361 B.R. at 291. A more reasonable interpretation of § 1121(e)(3)(A) is that because only the debtor is bound by the § 1121(e)(2) deadline, only the debtor needs the ability to obtain an extension.

Finally, Congress's intent to provide greater judicial oversight over small business *debtors*, rather than creditors, is apparent upon examination of the House Committee on the Judiciary's report recommending passage of BAPCPA. The pertinent provision relating to § 1121 reads as follows:

> Most chapter 11 cases are filed by small business debtors. Although the Bankruptcy Code envisions that creditors should play a major role in the oversight of chapter 11 cases, this often does not occur with respect to small business debtors. The main reason is that creditors in these smaller cases do not have claims large enough to warrant the time and money to participate actively in these cases. . . . S. 256 addresses the special problems presented by small business cases by instituting a variety of time frames and enforcement mechanisms designed to weed out small business debtors who are not likely to organize. It also requires that these cases be more actively monitored by United States trustees and the bankruptcy courts.

H.R. Rep. No. 109-31, pt. 1, at 105 (2005). Congress's major concern in creating special deadlines for small business bankruptcies was the lack of creditor oversight. Applying a statutory deadline to creditors making it more difficult for them to participate in the reorganization process flies in the face of Congressional intent. Enterprise Bank, a secured creditor, desires to see Debtor sold through Enterprise's plan of reorganization. This is precisely the type of creditor participation that Congress felt was *lacking* in the small business context. In light of Congress's stated intent in amending § 1121(e), applying the 300-day deadline to non-debtor plan proponents would be inappropriate.

Movants rely primarily on two cases in support of their argument that § 1121(e) applies to all plan proponents. However, neither case is on point. In *In re Randi*, the debtor in that case failed to file a plan and disclosure statement within the 300-day deadline, although they did file a plan 351 days after the order for relief. *In re Randi's, Inc.*, 474 B.R. 783, 784 (Bankr. S.D. Ga. 2012). Shortly thereafter, the sole shareholder of the debtor then filed an ostensibly competing plan, although the shareholder's plan was in fact identical to the debtor plan. *Id.* at 786. Because the shareholder plan was filed solely in an attempt to cure the debtor's failure to file a timely plan, the court specifically declined to consider whether § 1121(e) applied to non-debtor plans. *Id.* The court concluded that "[o]nce the 300-day time period ends and there is no plan filed by any party in interest, "cause" for dismissal exists" under § 1121(b)(4). *Id.* This is not the case

here, where Debtor filed a plan within the 300-day deadline. Accordingly, the logic of *In re Randi* does not apply.

The second case cited by Movants, *In re Sanchez*, is similarly distinguishable. In *Sanchez*, the debtor filed a disclosure statement and plan 303 days after the order for relief. *In re Sanchez*, 429 B.R. 393, 396 (Bankr. D.P.R. 2010). No other party in interest filed a competing plan. *Id.* The Court held that § 1121(e) "provided for small business debtors to file their plan within the 300 day 'drop dead' or to extend said term." *Id.* at 399. The debtor's failure to file a plan within the deadline constituted cause under § 1112(b)(4)(J), and the court accordingly dismissed the case. *Id.* at 400. Just as in *Randi*, the court did not consider whether § 1121(e) applies to non-debtor plan proponents. *Sanchez* does not support Movants' position.

*Section 1112(b)(4)(J)*

Movants further argue that if the Court adopts the reasoning expressed in *Riviera Drilling* and *Florida Coastal*, it would violate the canon of construction against rendering statutory language meaningless. "Courts should give effect to all parts of a statute and should not adopt a statutory construction that makes any part superfluous or meaningless, if that result can be avoided." *Whitaker Constr. Co. v. Benton & Brown, Inc. (In re Whitaker Constr. Co.)*, 411 F.3d 197, 205 (5th Cir. 2005). Section 1112(b)(4)(J) establishes that cause for dismissal or conversion exists where there has been "failure to file . . or confirm a plan, within the time fixed by this title or by order of the court." There is no deadline for filing a plan in the Bankruptcy Code for a chapter 11 case other than in small business cases. *In re Hyatt*, 479 B.R. 880, 891 (Bankr. D.N.M. 2012). Consequently, the phrase "within the time fixed by this title" must be referring to § 1121(e)(2).

Movants do not explain how interpreting § 1121(e)(2) to apply only to the small business debtor would render § 1112(b)(4)(J) meaningless. They apparently take the position that allowing non-debtors to file a plan after 300 days prevents courts from ever dismissing or converting a case for failure to comply with § 1121(e). This is not the case. Sections 1112(b)(4)(J) and 1121(e)(2) still set a limit on how long a debtor can wait to file a plan before the case will be dismissed or converted. If a small business debtor does not file a plan within 300 days or obtain an extension, its case will be dismissed or converted because it failed to file a plan "within the time fixed by this title," regardless of whether non-debtor proponents are bound by the deadline. *See In re Riviera Drilling & Exploration Co.*, 502 B.R. 863, 871 (B.A.P. 10th Cir. 2013) ("Most of the cases that address plans filed after the 300-day limit concern debtors' plans and have concluded that once that time passes . . . without a plan being filed, cause to dismiss or convert the case exists."). Section 1112(b)(4)(J) has not been rendered superfluous.

Finally, Movants argue that even if § 1121(e)(2) applies only to the debtor, § 1112(b)(4)(J) has still been satisfied.[4] Simbaki filed its plan on August 29, 2014 and did not confirm a plan within 45 days. Movants interpret § 1112(b)(4)(J) as a mandatory "drop dead" provision as soon as the 45-day deadline in § 1129(e) has passed. While it is correct that a plan must be confirmed by the court 45 days after filing, that is a deadline for Court consideration, not for Debtor performance. Section § 1129(e) states that "*the court* shall confirm a plan that complies with the applicable provisions of this title . . . not later than 45 days after the plan is filed. . . ." (emphasis added). Courts are split on whether failure to confirm a plan within 45 days constitutes cause under § 1112(b)(4)(J). *See In re Crossroads Ford, Inc.*, 453 B.R. 764, 769-70 (Bankr. D. Neb. 2011) (holding that failure to confirm a plan does not mandate dismissal); *In re*

---

[4] A viewpoint which seemingly confirms the Court's position that nothing in § 1112(b)(4)(J) will be rendered meaningless by this opinion.

*Maxx Towing, Inc.*, 2011 WL 3267937 at *4 (Bankr. E.D. Mich. July 27, 2011); *In re Mississippi Sports and Recreation, Inc.*, 483 B.R. 164, 167 (Bankr. W.D. Wis. 2012). *But see In re CCT Commc'ns, Inc.*, 420 B.R. 160, 168 (Bankr. S.D.N.Y. 2009) (holding that dismissal is mandatory once the deadline for confirmation has passed); *In re Save Our Springs (S.O.S.) Alliance, Inc.*, 393 B.R. 452, 456 (Bankr. W.D. Tex. 2008); *In re Caring Heart Home Health Corp.*, 380 B.R. 908, 910 (Bankr. S.D. Fla. 2008). Because interpreting § 1112(b)(4)(J) to mandate dismissal or conversion if a plan is not confirmed could lead to absurd results, the Court rejects this interpretation.

Consider a scenario where a debtor files a plan on the day of the order for relief but fails to obtain confirmation within 45 days. Under § 1121(e)(2), the debtor would still have 255 days to file a new plan. However, under the *CCT Communications* rationale, the court would be required to dismiss or convert the case as soon as a party in interest makes the request. In order to avoid this harsh result, a sensible debtor would wait as long as possible to file a plan to negotiate with creditors and maximize their chance at success. This is inconsistent with Congress's intent in creating special deadlines for small business cases in order to prevent debtors from treating chapter 11 as a "parking lot." *Mississippi Sports*, 483 B.R. at 167. Giving debtors only one shot at confirmation seemingly incentivizes debtors to do just that.

Furthermore, the plain language of § 1129(e) itself indicates that dismissal or conversion is not mandatory once the deadline has passed. The statute requires a court to take action on a plan once it has been filed, but does not appear to set any deadline for the debtor. *See Crossroads Ford*, 453 B.R. at 768. This is in contrast with § 1121(e), which mandates that the plan proponent, rather than a court, take certain action. Dismissing or converting the debtor's

case in a situation where it failed to comply with a deadline is appropriate.  Imposing a penalty on a debtor when a court did not approve their plan is a different proposition.

This is not to say that § 1112(b)(4)(J) can never be used to dismiss or convert a case when a debtor cannot obtain plan approval.  It is common practice for bankruptcy courts to issue orders requiring a debtor to confirm a plan by a certain date or face dismissal.  If a debtor misses that court-ordered deadline, cause would exist because the debtor failed "to file or confirm a plan, within the time fixed by this title *or by order of the court*."  § 1112(b)(4)(J) (emphasis added).  However, the Court issued no such order in this case.  Because Simbaki did not violate an order of this court, its failure to obtain plan confirmation within 45 days does not constitute cause for dismissal or conversion under § 1112(b)(4)(J).

## Conclusion

Movants have not established that cause for conversion or dismissal exists under 11 U.S.C. § 1112(b)(4)(J).  Accordingly, the motion to dismiss the case is denied.  The Court will issue an order consistent with this memorandum opinion.

SIGNED **December 5, 2014.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE