

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**04/06/2015**

| | | |
|---|---|---|
| IN RE: | § | |
| SIMBAKI, LTD; dba BERRYHILL BAJA | § | CASE NO: 13-36878 |
| GRILL; dba BERRYHILL BAJA GRILL & | § | |
| CANTINA | § | |
|     Debtor(s) | § | |
| | § | CHAPTER  7 |

## MEMORANDUM OPINION

Passage Realty, Inc. filed a motion to enforce the Court's November 10, 2014 order

requiring Debtor Simbaki, Ltd. to pay $12,594.00 in December rent within 10 days of the

contractual due date of December 1, 2014.  Rodney Tow, the chapter 7 trustee, objected, arguing

that the rent was a chapter 11 administrative expense.  Passage contends that the December rent

is a chapter 7 administrative expense.  Because the obligation to pay rent was incurred before the

case converted to chapter 7, the December rent must be treated as a chapter 11 administrative

expense.

### Background

Simbaki operated two Berryhill Baja Grill franchises in Montrose and Baybrook.  (ECF

No. 192 at 5).  Simbaki rents the Baybrook location from Passage.  (ECF No. 299).  The parties

agree that the lease agreement required rent to be paid the first day of each month.   On

November 24, 2013, Simbaki filed a voluntary petition for chapter 11 relief.  (ECF No. 1).  On

May 28, 2014, Simbaki filed a motion to assume the Passage lease.[1]  (ECF No. 146).  Before the

Court could rule on the motion to assume, the United States Trustee filed a motion to convert the

case to chapter 7 or dismiss with prejudice on October 6, 2014.  At a hearing on the motion to

convert or dismiss on November 10, 2014, secured creditor Enterprise Bank announced that it

---

[1] The Court had granted Simbaki an extension of the 90-day deadline for assuming or rejecting the lease on February 26, 2014.

had located a potential buyer for the restaurant franchises.  The Court issued an order on the same date, stating that the case would be dismissed or converted on December 9, 2014 unless Enterprise Bank filed a chapter 11 plan that conformed with the Court's requirements.  (ECF No. 269).  The November 10 order further required Simbaki to make December lease payments to passage "within 10 days of their contractual due date."  *Id.*

However, Enterprise was unable to finalize the deal with the potential buyer.  On December 9, 2014 the Court issued an order converting the case to a chapter 7.  (ECF No. 279).  The order stated that "[t]he Passage real property lease is not affected by this Order."  *Id.*  Rodney Tow was also appointed as chapter 7 trustee on December 9, 2014.  (ECF No. 282).  Passage did not receive payment of the $12,594 in December rent by the December 11, 2014 deadline established in the November 10 order.  In response, Passage filed a motion seeking an order directing the debtor or chapter 7 trustee to immediately pay the December rent.  At a January 16, 2015 hearing, Tow objected to the motion to the extent it sought to characterize the unpaid rent as a chapter 7 administrative expense.  He took the position that the rent should be characterized as a chapter 11 administrative expense.

The Court required briefing on the proper classification of the unpaid rent.  Tow did not file a brief on the issue.  Despite the trustee's failure to file briefing, the Court is nevertheless obligated to follow the law.  Although the Court adopts the trustee's position on this issue, the failure of trustee's counsel to comply with the Court's briefing requirement must be addressed.  Accordingly, Trustee's counsel is barred from seeking any fees pertaining to this dispute, the Passage lease, negotiations concerning the Passage lease, and the associated hearings for the period December 12, 2014 through April 3, 2015.

**Analysis**

The Court is presented with a single issue: should unpaid, post-petition rent that was due before the case converted from a chapter 11 case to a chapter 7 case be classified as a chapter 7 administrative expense if the Court allowed the debtor to make the rent payment on a date after the case converted to chapter 7?  The Court finds that it should not.

I.   The Shopping Center Amendments

*Post-Petition Rent Under the Bankruptcy Code*

Before the Court can answer whether the unpaid rent is a chapter 7 or 11 administrative expense, it must first determine whether it is an administrative claim at all.  The answer to this preliminary question necessitates consideration of three intersecting provisions of the Bankruptcy Code.  Section 365(d)(3) states that:

> The trustee shall timely perform all obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

In turn, the pertinent provisions of § 503(b)(1) provide that:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate. . .

Finally, § 348(d) states:

> A claim against the estate or the debtor that arises after the order for relief but before conversion in case that is converted under section 1112, 1208, or 1307 of this title, *other than a claim specified in section 503(b)* of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

(emphasis added).

Prior to the enactment of § 365(d)(3), if a debtor failed to make payments under a commercial lease, the landlord's remedy was to assert an administrative claim under § 503(b)(1)(A). *In re Imperial Beverage Group, LLC*, 457 B.R. 490, 497 (Bankr. N.D. Tex. 2011). However, this section only compensates for "the actual, necessary costs and expenses of preserving the estate." In practical terms, the bankruptcy estate's liability for unpaid rent was limited to the reasonable value to the estate of the actual occupancy and use of the property. *In re Braniff Airways, Inc.*, 783 F.2d 1283, 1286 (5th Cir. 1986). Unlike other creditors, landlords often cannot choose to cease doing business with the debtor. Under the previous Code language, landlords potentially would not receive rent while the debtor decided to assume or reject the lease. *Imperial Beverage*, 457 B.R. at 497. To combat this perceived inequity, Congress enacted the so-called Shopping Center Amendments included as part of the 1984 Bankruptcy Amendments and Federal Judgeship Act.

The 1984 amendments imposed a strict time limit on the ability of a trustee to assume or reject a lease for nonresidential real property. *In re Mr. Gatti's, Inc.*, 164 B.R. 929, 932 (Bankr. W.D. Tex. 1994). Congress enacted § 365(d)(3) to "insure that the debtor-tenants [of nonresidential property] pay their rent, common area and other charges on time, pending the trustee's assumption or rejection of the lease." 130 Cong. Rec. S8891, 599 (1984) (statement of Sen. Hatch). The plain language of § 365(d)(3) is clear: the debtor-tenant must fully and timely perform its obligations under the lease. *Mr. Gatti's*, 164 B.R. at 933. The statute is silent, however, as to the precise *remedies* available to a landlord whose tenant ignores § 365(d)(3) and fails to pay post-petition rent.

*Three Interpretations of § 365(d)(3)*

Three lines of cases have developed around this question, each leading to a separate conclusion. *Imperial Beverage*, 457 B.R. at 498. As defined by Colliers, the majority approach "interprets section 365(d)(3) as granting the lessor automatic administrative expense treatment, independent of section 503(b), which ordinarily governs allowance of administrative expenses, for the amount called for by the lease." 3 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* § 365.04[1][b] (16th ed. 2011). Under this theory, the lessor does not need to show that the estate received a benefit from its right to the property because "the statute has already granted priority payment status to the full amount of rent." *Towers v. Chickering & Gregory (In re Pac.-Atl. Trading Co.)*, 27 F.3d 401,404 (9th Cir. 1994). Notable cases which advocate this approach include *In re Worths Stores Corp.*, 135 B.R. 112 (Bankr. E.D. Mo. 1991); *In re Pudgie's Dev. Of NY, Inc.*, 202 B.R. 832 (Bankr. S.D.N.Y.); and *In re Amber's Stores, Inc.*, 193 B.R. 819 (Bankr. N.D. Tex. 1996).

A substantial minority of courts, by contrast, take the position that § 365(d)(3) requires the debtor to pay rent, but if it fails to do so the landlord must assert an administrative expense under § 503(b)(1)(A). 3 *Collier on Bankruptcy* § 365.04[1][b]. In *In re Orvco, Inc.*, the leading case advocating the minority approach, the Ninth Circuit B.A.P. opined that by not specifying the remedies available to landlords, Congress intended to give bankruptcy courts broad discretion to decide the consequences of a § 365(d)(3) breach. 95 B.R. 724, 726 (9th Cir. B.A.P. 1989) (citing *In re Southwest Aircraft Serv., Inc.*, 831 F.2d 848, 854 (9th Cir. 1987)). Such consequences could include the above-mentioned § 503(b)(1)(A) claims, forfeiture of the lease, or no consequences at all. Other cases reaching this conclusion include *In re Mr. Gatti's, Inc.*, 164 B.R. 929 (Bankr. W.D. Tex. 1994) and *In re Patella*, 102 B.R. 223 (Bankr. D.N.M. 1989).

In *In re Midway Airlines Corp.*, the Fourth Circuit found both the minority and majority positions problematic and required a middle ground. *CIT Commc'n Fin. Corp. v. Midway Airlines Corp. (In re Midway Airlines Corp.)*, 406 F.3d 229 (4th Cir. 2005).[2]  With regards to the minority view, the *Midway* court argued it contravenes the plain language of § 365(d)(3) by requiring landlords to assert a § 503(b)(1)(A) claim despite §365(d)(3) entitling landlords to receive post-petition, pre-rejection rent "*notwithstanding 503(b)(1)*."  *Midway*, 406 F.3d at 236-37.  The minority approach limits a landlord's recovery to the reasonable value to the estate of the actual use of the property, which was precisely the problem Congress intended to fix by enacting § 365(d)(3).

Although the majority approach may be more in line with Congressional intent, the *Midway* court noted two major flaws.  First, it is unclear whether an independent §365(d)(3) administrative claim could even be paid under the Bankruptcy Code at all.  Section 507 of the Code, which sets forth the priority of payments in a bankruptcy case, gives high priority to "administrative expenses allowed under section 503(b) of this title," but makes no mention of claims under § 365(d).  *See Midway*, 406 F.3d at 238.  "Thus, even if § 365(d)(3) created an independent administrative expense claim, the Bankruptcy Code's plain language precludes the 'conclusion that [such a] claim is entitled to priority comparable to that of a § 503(b) claim." *In re Imperial Beverage Group, LLC*, 457 B.R. 490, 499 (Bankr. N.D. Tex. 2011) (quoting *Midway*, 406 F.3d at 238).

The second problem with the majority approach is precisely the question the Court is presented with here: what happens when a bankruptcy case is converted from a chapter 11 to chapter 7?  Section 348(d) provides that post-petition, pre-conversion claims lose their priority

---

[2] *Midway* involved a claim under §365(d)(10), which was then renumbered as 365(d)(5) in 2005.  Section 365(d)(5) is modeled on § 365(d)(3) and the pertinent language is identical.

over post-petition, post-conversion claims.  However, § 503(b) claims are specifically exempted from this general rule.  If a landlord's claim for post-petition rent only arose as an independent § 365(d)(3) claim, not a § 503(b) claim, "after the conversion a [§ 365(d)(3)] claim would be equivalent in priority to pre-petition, unsecured claims but subordinated to all other post-petition § 503(b) administrative expense claims." *Midway*, 406 F.3d at 238.  It would be a strange result for Congress to create a system where commercial landlords would retain their priority over other unsecured claimants only so long as the case remained in a chapter 11.

The *Midway* court's solution to these problems is to classify post-petition rent as "administrative expense claim under § 503(b), [but not] under the specific provision of § 503(b)(1)(A)." *Id.* at 236.  Section 503(b) begins: "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . *including*. . ."  The use of the word 'including' implies that the list of administrative expenses in § 503(b) is non-exhaustive.  By classifying unpaid rent owed under § 365(d)(3) as a § 503(b) administrative claim independent of §503(b)(1)(A), a landlord need not show that the rent provided a reasonable benefit to the estate.  Further, a § 503(b) administrative claim would still retain its priority if a case converted from chapter 11 to chapter 7.  The *Midway* approach has been adopted by the Eighth Circuit as well as numerous recent cases examining the issue.  *See, e.g., In re Burival*, 613 F.3d 810 (8th Cir. 2010); *Imperial Beverage*, 457 B.R. at 500; *In re Lakeshore Const. Co. of Wolfeboro*, 390 B.R. 751 (Bankr. D.N.H. 2008); *In re Double G Trucking of the Arlatex, Inc.*, 442 B.R. 684 (Bankr. W.D. Ark. 2010).  Colliers notes that the *Midway* alternative "seems warranted."  3 *Collier on Bankruptcy* § 365.04[1][b].  The Court adopts the *Midway* approach and finds that Passage's claim for December rent is an administrative claim under § 503(b) independent of §503(b)(1)(A).

II.  Chapter 7 and Chapter 11 Administrative Expenses

*Proration Theory vs. Billing Theory*

Having established that the December rent is an administrative claim, the Court must determine when the claim was incurred.  The Bankruptcy Code provides that administrative expenses are among the first unsecured claims to be paid.  11 U.S.C. § 507(a)(2).  Administrative expense priority is justified on the basis that "creditors must pay for those expenses necessary to produce the distribution to which they are entitled."  *Texas v. Lowe (In re H.L.S. Energy Co.)*, 151 F.3d 434, 437 (5th Cir. 1998).  In the context of case which has been converted from a chapter 11 to a chapter 7, the administrative expenses of the chapter 7 case have priority over the prior chapter 11 administrative expenses.  11 U.S.C. § 726(b).  "The super-priority status for the so-called 'burial expenses' after the conversion was intended to provide an incentive to encourage capable trustees and professionals to act in superseding cases."  *In re Codesco, Inc.*, 18 B.R. 225, 227 (Bankr. S.D.N.Y. 1982).  This purpose would be negated if administrative expenses from the aborted chapter 11 case were also given super-priority status.  *Id.*

Generally, when courts must decide whether a particular administrative expense was incurred during the chapter 7 case or during the chapter 11 case, they usually "look[] to when the claim against the estate was originally incurred."  6 *Collier on Bankruptcy* § 726.03.  However, the Bankruptcy Code does not define the term "incur."  *In re Roundwood Corp.*, 72 B.R. 296, 299 (Bankr. D.S.C. 1987).  Although case law is limited as to when a debt is incurred for the purposes of § 726(b), substantial case law exists examining a similar issue in regards to § 365(d)(3).  Section § 365(d)(3) requires rent to be paid that "aris[es] *from and after* the order for relief."  Traditionally, commercial leases require rent to be paid on the first of the month.  Consider a scenario where the debtor's rent is due on January 1, but has not been paid.  The

debtor then files a voluntary petition on January 15.[3]  Can the landlord require the debtor to pay rent as an administrative expense for January 15-31 (commonly known as the stub rent period) under § 365(d)(3)?

Courts addressing this question fall into two major camps.  The 'proration theory' contemplates a debtor's rent obligation as arising on a daily basis post-petition.  *Imperial Beverage*, 457 B.R. at 501.  Under this theory, a debtor's obligation to pay under § 365(d)(3) is triggered for each day of the stub rent period.  It was apparently common practice in bankruptcy courts before the enactment of § 365(d)(3) to prorate payment of a debtor's obligation under a lease.  *See, e.g.*, *In re All for a Dollar, Inc.*, 174 B.R. 358, 361 (Bankr. D. Mass. 1994) ("A majority of courts considering this question have adhered to the long-standing practice of prorating payment of a debtor's obligations under a lease, regardless of the billing date.").  Courts following the proration theory found "[n]othing in the legislative history indicat[ing] that Congress intended § 365(d)(3) to overturn the long-standing practice under § 503(b)(1) of prorating debtor-tenants' rent to cover only the postpetition, prerejection period, regardless of billing date."  *In re Child World, Inc.*, 161 B.R. 571, 575-76 (S.D.N.Y. 1993).  Because the obligation to pay rent arises each day, the landlord can recover stub rent under § 365(d)(3).

A substantial number of courts, including in the Southern District of Texas, have disagreed.  The "billing theory" holds that if a bill for rent comes due prior to the order for relief, stub rent is not an obligation that must be timely performed under § 365(d)(3).[4]  *Imperial Beverage*, 457 B.R. at 501.  In *In re Appletree Markets, Inc.*, the bankruptcy court for the

---

[3] A voluntary bankruptcy petition constitutes an order for relief.  11 U.S.C. § 301.

[4] Cases advocating the billing theory include *Centerpoint Prop. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.*, 268 F.3d 205 (3d Cir. 2001); *Imperial Beverage*, 457 B.R. at 501; *In re Oreck Corp.*, 506 B.R. 500, 509 (Bankr. M.D. Tenn. 2014); and *Koenig Sporting Goods, Inc. v. Morse Road Co. (In re Koenig Sporting Goods, Inc.)*, 203 F.3d 986 (6th Cir. 2006).

Southern District found that the legislative history of § 365(d)(3) made clear that the debtor's "obligations must be performed *at the time required in the lease.*"  139 B.R. 417, 420 (Bankr. S.D. Tex. 1992) (emphasis in original) (quoting 130 Cong. Rec. S8894-95 (1984) (remarks of Senator Hatch)).  Furthermore, the court noted that the plain language of the statute refers to obligations "arising from and after the order for relief *under* any unexpired lease of nonresidential real property."  The lease obligations in question, "arise once each month on the first of the month, once each quarter commencing on the first of January and, in one instance, annually.  The individual lease obligations are not, by their respective terms, payable per diem." *Id.*  If the obligation to pay rent comes due under the terms of the lease before the order for relief, then under the billing theory it cannot be recovered under § 365(d)(3).

In the context of the stub rent period and its interaction with § 365(d)(3), the Court agrees with the *Appletree* reasoning.[5]  The plain language of the statute implies that the lease should dictate when an obligation must be performed.  "The starting point in interpreting a statute is its language."  *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993).  Proration was pre-Code practice and "it seems clear . . . that Congress enacted § 365(d)(3) for the purpose of altering a pre-Code practice that had created a problem for landlords of non-residential property. . . ." *Centerpoint Prop. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 211 (3d Cir. 2001).

---

[5] It should be noted that commentators examining the issue appear to be as equally split as the courts.  *Compare* Josef S. Athanas & Scott A. Semenek, *Pro-ration of Rent Dead in Third and Sixth Circuits—Landlords Won the Battle, But Will they Lose the War?*, 19 Bankr. Dev. J. 123 (2002) (advocating the proration approach) *and* Victoria Kothari, *11 U.S.C. § 365(d)(3): A Conceptual Status Argument for Proration*, 13 Am. Bankr. Inst. L. Rev. 297 (2005) (advocating the same), *with* Joshua Fruchter, *To Bind or Not to Bind – Bankruptcy Code § 365(d)(3): Statutory Minefield* , 68 Am. Bankr. L.J. 437 (1994) (advocating for the billing approach as set forth in *In re Appletree Markets*).

*Applying the Billing Theory to § 726(b)*

Although the billing theory is appropriate in the context of § 365(d)(3), it must be noted that the language of § 726(b) differs from that of § 365.  While § 365 refers to obligations "under any unexpired lease," § 726(b) refers only to claims "incurred under any other chapter."  The plain language analysis of § 365(d)(3) would be inapposite if applied to § 726(b).  Despite the differences in their precise language, however, both statutes are asking essentially the same question: when did the debtor take on its obligation to pay?  In the context of a nonresidential lease, the billing theory should be applied to both statutes.

Black's Law Dictionary defines 'incur' as "to suffer or bring on oneself (a liability or expense)."  *Black's Law Dictionary* 771 (7th ed. 1999).  Webster's defines it as "to become liable or subject to."  *Webster's Ninth New Collegiate Dictionary* 611 (9th ed. 1990).  Plainly, a debtor incurs a lease payment when he becomes liable to pay it.  It could be argued that a tenant incurs a liability to pay *all* of the rent for the entire term of the lease as soon as it enters into a lease agreement.  This approach makes little sense, however, when considering an executory contract such as a lease.  Under Texas law, and under the Bankruptcy Code, leases are treated as installment contracts.  In *F.D. Stella Prods. Co. v. Scott*, the Texas Court of Appeals found that:

> An installment contract under which the monthly payment is for a portion of the goods received is a classic divisible contract.  So too is a lease, in which a month's use of the lessor's property is set off by a month's worth of rent.  Under such a lease, for each month's use there is a new debt apportioned as monthly rent.

875 S.W.2d 462, 466 (Tex. App. 1994).  Simbaki's lease with Passage required it to pay, on the first of each month, rent for use of the property for the coming month.  As rent came due on the

first, Simbaki incurred the obligation to pay that rent for the purposes of determining the administrative obligation. [6]

The few cases examining the issue in the context of § 726(b) generally seem to apply the billing theory.[7]  In *In re Dieckhaus Stationers of King of Prussia, Inc.*, the court found that "the amount of rent *falling due*" postpetition but before the case converted from a chapter 11 to a chapter 7 was a chapter 11 administrative expense claim.  73 B.R. 969, 970, 974 (Bankr. E.D. Pa. 1987) (emphasis added).   The court in *In re Roundwood Corp.* found that administrative expenses should be characterized as chapter 11 expenses because they became "due and payable" during the pendency of the chapter 11.   72 B.R. 296, 299 (Bankr. D.S.C. 1987).  Because the billing theory is both supported by case law and comports with a lease's status as an installment contract, the Court will apply the billing theory to § 726(b).

*The November 10, 2014 Order*

Under the terms of the lease, Simbaki's December rent was due before the case converted to a chapter 7.  But on November 9, 2014, the Court issued an order stating that "December lease payments must be made within ten days of their contractual due date."  (ECF No. 269).  Ten days after the contractual due date was December 11, 2014, or two days after the case converted to a chapter 7.  If the November 10 order modified the terms of the lease agreement to change the payment date from December 1, 2014 to December 11, 2014, then the December rent would be classified as chapter 7 expense.  *See In re The Tandem Group, Inc.*, 61 B.R. 738, 739-41 (Bankr. C.D. Cal. 1986) (holding that because a court order required the debtor to pay rent on a date

---

[6] This is distinguished from the effect of a lease rejection under § 365(g), providing the rejection of an unexpired lease of real property will result in a pre-petition claim.   The amount of the pre-petition claim is then determined under § 502(b)(6).

[7] A notable exception being *In re Buyer's Club Markets, Inc.*, where the court applied the proration method to both § 365(d)(3) and § 726(b).  115 B.R. 700, 701-02 (Bankr. D. Col. 1990).

before conversion, the rent in question should be considered a chapter 11 administrative expense).

Viewed in isolation, the statement that "December lease payments must be made within ten days. . ." may be ambiguous as to whether it effected a change in the due date for rent. But any ambiguity is clarified when given the proper context. The pertinent provisions of the order state, in full:

> November lease payments and December lease payments must be made. If not made, the leases will be deemed rejected and the automatic stay will be terminated in the same manner as set forth in paragraph 8. Any unpaid November lease payment must be made within 7 days of the entry of this Order. December lease payments must be made within 10 days of their contractual due date.

The order set forth the consequences of what would happen if Simbaki did not make its November and December rent payments. If Simbaki failed to make the payments on the specified dates, then the automatic stay would terminate and the leases would be deemed rejected. By explicitly referencing the contractual due date within the order, the Court demonstrated its intent for that date to remain intact.

This result becomes even more obvious considering that the Court did not have the authority to modify the due date of the lease. Section 365(d)(3) states, in part, "[t]he court may extend, for cause, the time for performance of any such [rent] obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period." November 10, 2014 was almost a full year after Simbaki filed its original bankruptcy petition. The Bankruptcy Code prohibited the Court from extending Simbaki's time for performance of its rent obligation because it did not arise within 60 days after the order for relief. *See In re Almac's, Inc.*, 167 B.R. 4, 6 (Bankr. D.R.I. 1994).

Simbaki incurred a contractual obligation to pay the December rent on December 1, 2014.  This obligation was not modified by the Court's November 10, 2014 order.  Because the obligation was incurred before the case converted to chapter 7, it must be classified as a chapter 11 administrative expense.

<h3 style="text-align:center">Conclusion</h3>

The Court will issue an order consistent with this memorandum opinion.

SIGNED **April 3, 2015.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE